**United States District Court**
For the Northern District of California

```
1  ABBOTT LABORATORIES, INC., and)
   ABBOTT CARDIOVASCULAR SYSTEMS,)
2  INC.,                         )
                                 )
3               Plaintiffs,      )
                                 )
4          v.                    )
                                 )      No. C-08-4962-DLJ
5  MEDTRONIC, INC. and MEDTRONIC )
   VASCULAR, INC.,               )
6               Defendants.      )
7  _____)
```

8

9      In January 2009, the defendants filed a Motion to Stay

10 Proceedings Pending PTO Review of Patent Term Extension Application.

11 This Court held a hearing on the matter on March 12, 2009.  Robert

12 Van Nest, Ashok Ramani, and James Elacqua appeared for the Medtronic

13 defendants.  David Headrick, Lily Lim and Scott McBride appeared for

14 the Abbott plaintiffs.  Having considered the arguments of counsel,

15 the papers submitted, the applicable law, and the record in this

16 case, the Court hereby grants defendants' request for a stay.

17

18

19 I.  Background

20      ACS and Medtronic are companies engaged in developing,

21 manufacturing, promoting, and selling medical devices, including

22 catheters used in percutaneous transluminal coronary angioplasty

23 (PTCA).  Over the years they have been involved in multiple complex

24 patent infringement suits involving their products.  Abbott

25 Laboratories is the successor in interest to ACS on the Yock patent,

26 which is at the center of the dispute in this case.

27      On May 17, 2000 in case No. 95-3577 DLJ, this Court entered an

28 injunction against Medtronic from infringing claim 3 of the Yock

United States District Court

For the Northern District of California

patent, U.S Patent No. 5,451,233 ('233).  The term of the patent ran
until October 29, 2008.  The expiration provision of the injunction
stated that the injunction would stay in effect "until October 29,
2008 or other legal expiration of the patent."

On July 25, 2008, Yock filed an application for extension of
the term of the '233 patent with the Patent and Trademark Office
(PTO) pursuant to the Hatch-Waxman Act, as codified in 35 U.S.C §
156.  This section provides for an additional period of patent
protection for the time the patent holder was precluded from
benefitting from the patent during its term because a medical device
using the patent was pending FDA approval.  The Abbott application
was based upon the time spent by the FDA in regulatory review of
Abbott's Xience™ EECSS (Everolimus Eluting Coronary Stent System)
prior to its Pre-market Approval on July 2, 2008.  The Yock patent
covers a component part of the Xience device, the delivery system
used by the device.

Abbott was granted an interim extension by the PTO to be valid
until October 29, 2009 (although this interim extension could be
affected by final action by the PTO on the extension application
proper).  By Order of October 21, 2009 this Court dissolved the
injunction in case No. 95-3577 DLJ.  Medtronic then began sale of
its competing PTCA product, the Endeavor.  This action followed. The
Medtronic defendants have filed for a stay of these proceedings,
citing the fact that the PTO process for extension of the Yock

2

United States District Court

For the Northern District of California

patent is ongoing.  From the state of the record, the PTO extension review process appears to be proceeding apace, and the plaintiffs stated at the hearing that the PTO may make a final decision on the extension application as soon as six months from now.

II.  Legal Standard

A court has inherent authority to stay proceedings, for the power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Filtrol Corp. v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972). In exercising its discretion to stay an action, courts often consider: (1) the judicial resources that will be saved by avoiding duplicative litigation; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the potential prejudice to the non-moving party. Negotiated Data Solutions, LLC v. Dell Inc., No. 03-05755, 2008 U.S. Dist. LEXIS 77229, at *3-4 (N.D. Cal. Sept. 16, 2008).

II.  Discussion

Before even reaching the merits of the action, however, Abbott argues that Medtronic is judicially estopped by its behavior in the prior lawsuit from requesting a stay of proceedings in the current suit.

A.  Is Medtronic Estopped from Arguing for a Stay?

"Judicial estoppel is an equitable doctrine that precludes a

3

United States District Court
For the Northern District of California

party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir 2001). In order to find judicial estoppel, the court must find that (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party succeeded in persuading the court to the accept the earlier position; and (3) the party would derive an unfair advantage on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).

The basis for Abbott's argument is that in the prior litigation, Medtronic admitted that even if the Court dissolved the injunction, Abbott could still sue Medtronic for infringement. Abbott characterizes this admission by Medtronic as Medtronic agreeing that the new suit could "proceed", which Abbott then interprets as meaning "proceed with no opposition" from Medtronic. Review of the record does not support such an interpretation. See 10/3/08 transcript at 13:4-20 where counsel for defendant Medtronic states "we understand that we will have to compensate [plaintiffs] also if Yock is properly extended. We accept that burden" and "if they want to sue us for infringement or seek a preliminary injunction, they can do that."

While Medtronic did concede that Abbott could bring a new suit, and in such a suit might even seek a preliminary injunction, at no point did Medtronic state that it would not defend itself in such a

4

United States District Court

For the Northern District of California

suit. Medtronic's positions are not "clearly inconsistent."

Nor is Abbott correct in its argument that the Court relied on these representations in making its prior Order. While the Court discussed a potential future suit with the parties, the availability of a new lawsuit, and any particular party's position in a putative future suit, the Court did not ground its Order on those circumstances.

B.  <u>The Merits of the Stay Request</u>

The specific factual and legal scenario before the Court appears to be one of first impression.  The parties have not presented to the Court, nor is the Court aware of any other infringement action brought by a patent holder during a section 156 interim extension of the patent term.  In order to determine the appropriateness of staying the suit, the Court looks to the factors of judicial economy and prejudice.

1. Conservation of Judicial Resources

The parties do not agree as to whether a stay will conserve resources.  Medtronic argues that granting a stay and awaiting a decision by the PTO on whether the Yock patent is eligible for extension will promote the efficient and fair litigation of this action.  Underlying Medtronic's argument is the circumstance that the PTO has the power to decide that extension of the Yock patent is not warranted and to declare the existing extension status as void *ab initio*.  Abbott argues that the record to date suggests a

United States District Court

For the Northern District of California

conclusion that the PTO will ultimately grant an extension.  But that is by no means certain.  As the Court has noted in its previous Order, there are powerful arguments in support of a contrary conclusion.  At this point in the litigation the Court will conclude that this is an open question.

It is clear, however, that the PTO does have administrative authority to determine whether this patent is eligible for extension. <u>See</u> 35 U.S.C. §156. Medtronic argues that the Court should not have to rule on the merits of the extension application before the PTO and FDA have had an opportunity to complete their review. As support for their proposition they cite to a number of patent re-examination cases where courts have granted stays pending PTO determinations. In cases where a patent is undergoing re-examination, courts in this District have frequently stayed proceedings to permit the PTO to conclude its re-examination.  <u>See Sorensen v. Digital Networks N. Am. Inc.</u>, No. C 07-05568-JSW, 2008 WL 152179 (N.D. Cal. Jan. 16, 2008) (White, J.) (granting motion to stay during patent reexamination proceedings); <u>Tse v. Apple Inc.</u>, No. C 06-06573-SBA, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007) (Armstrong, J.); <u>Ricoh Co. v. Aeroflex Inc.</u>, No. C 03-04669-MJJ, 2006 WL 3708069 (N.D. Cal. Dec. 14, 2006) (Jenkins, J.); <u>In re Cygnus Telecomm. Tech. LLC</u>, 385 F. Supp. 2d 1022 (N.D. Cal. 2005) (Whyte, J.); <u>ASCII Corp. v. STD Entm't USA, Inc.</u>, 844 F. Supp. 1378 (N.D. Cal. 1994) (Walker, J.). <u>See also Negotiated Data Solutions,</u>

United States District Court

For the Northern District of California

1   LLC v. Dell Inc, 2008 WL 4279556 (N.D.Cal.,2008)(Fogel, J.) ("A

2   stay may be the most efficient and fairest course when there are

3   'independent proceedings which bear upon the case.'").

4

5      Abbott contests the applicability of re-examination cases since

6   the historical data indicates that a patent undergoing re-

7   examination is more likely than not to change in some way, which

8   would be grounds to justify a stay.  In contrast here, Abbott

9   argues, the PTO is less likely to change the current posture of the

10  case.  As the Court has already noted, this is by no means certain

11  in this case, and in any event, the rationale underlying the common

12  decisions by courts to grant stays in re-examination cases is

13  applicable in this case as well.  In both re-examination cases and

14  in the current case there is a risk of inconsistent outcomes when

15  there are two parallel proceedings looking at the same issue --

16  whether the '233 patent is eligible for extension.  Staying the

17  proceedings in this action will allow the administrative review

18  process to run its course prior to conducting any parallel

19  proceedings in this Court.  If the PTO determines that the Yock

20  patent is not eligible for extension, there is the real possibility

21  that the interim extension could be declared void *ab initio*, mooting

22  out the case. If the extension were granted, a concrete

23  administrative determination would then serve as the basis for the

24  parties' dispute in this Court.  The Court believes that the factor

25  of judicial economy weighs in favor of granting the stay.

26

27

28

7

**United States District Court**
For the Northern District of California

2.    Prejudice to the Parties

Abbott argues that it would be prejudiced if the stay were granted in that it thereby would be prevented from seeking a preliminary injunction, effectively nullifying its patent extension. Medtronic counters that Abbott will not suffer any prejudice from the proposed stay as Abbott would be able to recover monetary damages for the sale of any infringing products during the stay. It is correct that a stay would prevent Abbott from seeking a preliminary injunction.  But such injunctions are no longer available as a matter of course, following the recent Ebay, Inc. MercExchange, LLC, 547 U.S. 388 (2006) decision of the Supreme Court.  The Court further notes that it has already considered the relevant Ebay factors in connection with its October 2008 decision and found that an injunction was not warranted under the circumstances then present.  At that time the Court found that monetary damages can sufficiently compensate Abbott for the harm it faces from the sale of Medtronic products using the rapid-exchange system covered by the Yock patent. See October 21, 2008 Order, 19:15-21:8. In addition, the Court recognized that Abbott has been willing to accept license payments in lieu of enforcing its rights to exclusivity granted by the patent. Id., 20:7-13; 20:24-21:8.

Medtronic also argues that it would be prejudiced if the proceedings went forward.  The prejudice to Medtronic is asserted to be in the nature of the financial burden caused by the need to go

8

United States District Court

For the Northern District of California

forward with the litigation without sufficient clarity on the scope of the issues. The Ninth Circuit has held, in an unrelated factual scenario, that defense costs alone do not constitute hardship (see, Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005)). The Court notes that while defense costs may not be prejudice *per se*, they do represent a collateral consequence of proceeding with the parallel litigation in this Court when it may be wholly unnecessary. The Court finds that a stay in this case will not cause undue hardship to the parties.

V.  Conclusion

    Accordingly, the Court finds that in the interest of judicial economy a stay of the current proceedings is warranted to permit the PTO to issue a determination on whether the patent is eligible for an extension. All pretrial proceedings in this case are vacated and the parties are asked to notify the Court as to any material decisions of the PTO in its ongoing review of the extension eligibility issue.


        IT IS SO ORDERED

Dated: March  24, 2009

                                    _____
                                    D. Lowell Jensen
                                    United States District Judge

9